---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT**
_____

EYIOMA UWAZURIKE, ET AL.

**PLAINTIFFS-APPELLANTS**

V.

DAVE JOBES, ET AL.

**DEFENDANTS-APPELLEES**
_____

On Direct Appeal from the trial court in cause number 4:24-cv-00146-RGE,
United States District Court for the Southern District of Iowa

**APPELLANTS' OPENING BRIEF**
_____


**James P. Roberts**
Palmer Perlstein
15455 Dallas Parkway, Suite 540
Addison, Texas 75001
Phone: 214-987-4100
Facsimile: 214-922-9900
Email: james@palmerperlstein.com
**Counsel for Appellants**

## SUMMARY OF THE CASE
## AND STATEMENT REGARDING ORAL ARGUMENT

Appellants respectfully request oral argument. This appeal presents a significant constitutional question concerning the application of settled Fourth Amendment principles to warrantless, suspicionless geolocation searches conducted through modern digital surveillance tools. Courts in multiple jurisdictions have begun addressing the application of those established principles to geofence-style location searches, and the issues presented here have consequences well beyond the specific facts of this case.

The Court is asked to determine whether law enforcement officers are entitled to qualified immunity after conducting an area-wide geolocation search designed to identify all individuals present within a defined location, and after pursuing subpoenas and warrants allegedly derived from that search. Because the decision will shape the governing standard for digital location searches within this Circuit and contribute to the broader national discussion regarding constitutional limits on emerging surveillance methods, oral argument would materially assist the Court in resolving the important questions presented. Appellants request 20 minutes for oral argument.

## CORPORATE DISCLOSURE STATEMENT

Appellants are individuals and Appellees are individuals. There are no parent corporations, and no party is a publicly held corporation that owns 10/% or more of its stock.

# TABLE OF CONTENTS

SUMMARY OF THE CASE ...........................................................................2

AND STATEMENT REGARDING ORAL ARGUMENT ...................................2

CORPORATE DISCLOSURE STATEMENT ....................................................3

TABLE OF AUTHORITIES..........................................................................6

STATEMENT OF JURISDICTION ...............................................................9

QUESTION PRESENTED ..........................................................................11

STATEMENT OF ISSUES PRESENTED FOR REVIEW ................................12

STATEMENT OF THE CASE .....................................................................15

   **A. Nature of the Case** .................................................................15

   **B. Factual Background** ...............................................................15

   **C. Proceedings Below** ................................................................17

SUMMARY OF THE ARGUMENT...............................................................18

ARGUMENT ...........................................................................................20

   **I. Standard of Review**................................................................20

   **II. The District Court Erred in Holding That the Unlawfulness of the Geolocation Search Was Not Clearly Established**...........................20

      A. The District Court Correctly Held That Defendants Conducted an Unconstitutional Fourth Amendment Search ...................................20

      B. The District Court Defined the Right at an Impermissibly High Level of Specificity ..................................................................................21

      C. Supreme Court Precedent Clearly Established That Warrantless Collection of Location Data Is Unconstitutional.................................22

      D. The Court erred in finding it was not clearly established because there is "no case on point".................................................................27

      E. *United States v. Chatrie* Confirms – Rather Than Undermines – That the Unconstitutionality of Defendants' Geolocation Search Was Clearly Established .........................................................................28

**III.   The District Court Erred in Dismissing Fourth Amendment Claims Challenging Subpoenas and Warrants Tainted by the Unconstitutional Search**..............................................................................................................30

**IV.   Qualified Immunity Does Not Shield Searches and Seizures Premised on Tainted Information**.........................................................................31

**V.   The District Court Erred in Dismissing Failure-to-Intervene Claims** ...33

CONCLUSION................................................................................................34

PRAYER........................................................................................................35

CERTIFICATE OF SERVICE..........................................................................36

CERTIFICATE OF COMPLIANCE...................................................................36

## TABLE OF AUTHORITIES

**Cases**

Anderson v. Creighton,
483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987) ............................27

*Ashcroft v. al-Kidd*,
563 U.S. 731, 741 (2011)........................................................................ 22, 27, 30

*Bloodworth v. Kansas City Bd. of Police Comm'rs*,
89 F.4th 614, 628 (8th Cir. 2023) ..........................................................33

*Braden v. Wal-Mart Stores, Inc.*,
588 F.3d 585, 594 (8th Cir. 2009) ..........................................................20

*Camara v. Municipal Court of City and County of San Francisco*,
387 U.S. 523, 528, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) ...................................24

*Carpenter v. United States*,
585 U.S. 296, 138 S. Ct. 2206, 2218, 201 L. Ed. 2d 507 (2018) ................. passim

*Columbia v. Wesby*,
583 U.S. 48, 63 (2018)..........................................................................34

*Elder v. Gillespie,*
*54 F.4th 1055, 1063 (8th Cir. 2022)*.....................................................20

*Hope v. Pelzer*,
536 U.S. 730, 739 (2002)................................................................ 22, 26, 27, 30

Katz v. United States,
389 U.S. 347, 351–52 (1967)..............................................................25

*Kyllo v. United States*,
533 U.S. 27, 121 S. Ct. 2038, 2046, 150 L. Ed. 2d 94 (2001) ............ 12,14,18, 23

*McClendon v. City of Columbia*,
   305 F.3d 314, 331 (5th Cir. 2002) ........................................................34

*McCoy v. Alamu*,
   No. 20-31, 2021 WL 666347, at *1 (U.S. Feb. 22, 2021) ...................................27

*Nance v. Sammis*,
   586 F.3d 604, 612 (8th Cir. 2009) ............................................... 13, 34

*Perkins v. City of Des Moines, Iowa*,
   712 F.Supp.3d 1159, 1181 (S.D. Iowa 2024) ........................................................33

*Richardson v. Omaha Sch. Dist.*,
   *957 F.3d 869, 873 (8th Cir. 2020)*........................................................20

*Riley v. California*,
   573 U.S. 373, 134 S. Ct. 2473, 2490, 189 L. Ed. 2d 430 (2014)  12, 13, 14, 18, 23

*Smith v. Maryland*,
   442 U.S. 735, 743-44, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979) ............................26

*Taylor v. Riojas*,
   141 S. Ct. 52, 52–54, 208 L. Ed. 2d 164 (2020)........................................... 22, 27

*United States v. Chatrie*,
   590 F. Supp. 3d 901, 905 (E.D. Va. 2022), ................................................... 28, 29

*United States v. Madrid*,
   152 F.3d 1034, 1039–40 (8th Cir. 1998) ................................................. 12, 13, 32

United States v. McIntyre,
   646 F.3d 1107, 1111 (9th Cir. 2011) ................................................................26

*United States v. Miller*,
   425 U.S. 435, 443, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976) ...................................26

*United States v. Sesay*,
   937 F.3d 1146, 1152 (8th Cir. 2019) ....................................................................25

*Wong Sun v. United States*,
   371 U.S. 471, 488 (1963) ................................................................ 12, 13, 30, 31

*Zubrod v. Hoch*,
   907 F.3d 568, 573, 580 (8th Cir. 2018) ..............................................................33

**Statutes**

18 U.S.C. § 3742 ....................................................................................................9
28 U.S.C. § 1291 ....................................................................................................9
42 U.S.C. § 1983 ..................................................................................................15

**Rules**

Fᴇᴅ. R. Aᴘᴘ. P. 4(b)(2) ......................................................................................9, 10
Rule 12(b)(6) ........................................................................................................20

# IN THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

_____

## EYIOMA UWAZURIKE, ET AL.

### PLAINTIFFS-APPELLANTS

V.

## DAVE JOBES, ET AL.

### DEFENDANTS-APPELLEES

_____

### STATEMENT OF JURISDICTION

1. The jurisdiction of the United States District Court for the Southern District of Iowa was founded upon 18 U.S.C. § 1331.

2. The jurisdiction of the United States Court of Appeals for the Eighth Circuit is founded upon 28 U.S.C. § 1291, and is based upon the following particulars:

   I. Date of Order Granting Defendant's Motion to Dismiss: **November 5, 2025**. (App. 929-62; R. Doc. 89, at 1-34.)

   II. Date of Final Judgment entered in case: **November 7, 2025.** (App. 964; R. Doc. 90, at 1).

   III. Filing of notice of appeal: **November 13, 2025**. This notice of appeal was timely. FED. R. APP. P. 4(b)(2). (App. 966-68; R. Doc. 91, at 1-3.)

IV.   Filing of notice of supplemental appeal: **November 17, 2025**. This notice

of appeal was timely. FED. R. APP. P. 4(b)(2). (App. 970; R. Doc. 92, at

1).

Whether, under clearly established Fourth Amendment law, law enforcement officers are entitled to qualified immunity for conducting a warrantless, suspicionless geolocation search designed to identify all individuals present within a defined geographic area, and for subsequent searches and seizures allegedly premised on information derived from that unconstitutional search.

<u>**STATEMENT OF ISSUES PRESENTED FOR REVIEW**</u>

<u>FIRST ISSUE</u>: Whether the district court erred in holding that the unlawfulness of Defendants' warrantless, suspicionless geolocation search was not clearly established at the time of the search, thereby entitling Defendants to qualified immunity.

**Apposite Cases:**

- *Carpenter v. United States*, 585 U.S. 296, 138 S. Ct. 2206, 2218, 201 L. Ed. 2d 507 (2018)

- *Riley v. California*, 573 U.S. 373, 134 S. Ct. 2473, 2490, 189 L. Ed. 2d 430 (2014).

- *Kyllo v. United States*, 533 U.S. 27, 121 S. Ct. 2038, 2046, 150 L. Ed. 2d 94 (2001)

<u>SECOND ISSUE</u>: Whether the district court erred in dismissing Plaintiffs' Fourth Amendment claims challenging subpoenas, warrants, and other compulsory legal process obtained as a direct result of, and premised upon, the warrantless geolocation search.

**Apposite Cases:**

- *Wong Sun v. United States*, 371 U.S. 471, 488 (1963)

- *United States v. Madrid*, 152 F.3d 1034, 1039–40 (8th Cir. 1998)

- *Carpenter v. United States*, 585 U.S. 296, 138 S. Ct. 2206, 2218, 201 L. Ed.

2d 507 (2018)

- *Riley v. California*, 573 U.S. 373, 134 S. Ct. 2473, 2490, 189 L. Ed. 2d 430 (2014).

T̲H̲I̲R̲D̲ I̲S̲S̲U̲E̲: Whether Defendants are entitled to qualified immunity for searches and seizures carried out pursuant to subpoenas and warrants allegedly tainted by information derived from an unconstitutional geolocation search.

**Apposite Cases:**

- *Wong Sun v. United States*, 371 U.S. 471, 488 (1963)
- *United States v. Madrid*, 152 F.3d 1034, 1039–40 (8th Cir. 1998)
- *Carpenter v. United States*, 585 U.S. 296, 138 S. Ct. 2206, 2218, 201 L. Ed. 2d 507 (2018)
- *Riley v. California*, 573 U.S. 373, 134 S. Ct. 2473, 2490, 189 L. Ed. 2d 430 (2014).

F̲O̲U̲R̲T̲H̲ I̲S̲S̲U̲E̲: Whether the district court erred in dismissing Plaintiffs' failure-to-intervene claims where Defendants allegedly participated in, authorized, or failed to prevent unconstitutional searches and seizures arising from the geolocation search and its downstream investigative fruits.

**Apposite Cases:**

- *Nance v. Sammis*, 586 F.3d 604, 612 (8th Cir. 2009)
- *Carpenter v. United States*, 585 U.S. 296, 138 S. Ct. 2206, 2218, 201 L. Ed.

2d 507 (2018)

- *Riley v. California*, 573 U.S. 373, 134 S. Ct. 2473, 2490, 189 L. Ed. 2d 430 (2014).

- *Kyllo v. United States*, 533 U.S. 27, 121 S. Ct. 2038, 2046, 150 L. Ed. 2d 94 (2001)

## STATEMENT OF THE CASE

**A. Nature of the Case**

This is a civil action under 42 U.S.C. § 1983 challenging warrantless, suspicionless searches conducted by Iowa law enforcement officers using digital location-tracking techniques unavailable to the public. Plaintiffs and Intervenor Plaintiffs are former student-athletes at Iowa public universities, alleging that defendants violated the Fourth Amendment by using geolocation data to identify individuals present within university athletic facilities without a warrant, probable cause, or individualized suspicion. (App. 99-101; R. Doc. 33, at 14-16); (App.18-20; R. Doc. 32, at 14-16).

**B. Factual Background**

Defendants are Iowa law enforcement officers involved in an investigation concerning potential sports-wagering violations by collegiate athletes. (App. 13; R. Doc. 32, at 13). As part of that investigation, Defendants allegedly used digital tools to review historical location information reflecting when and where sports-wagering applications were opened or used in or near athletic facilities at the University of Iowa and Iowa State University. (App.18-20; R. Doc. 32, at 14-16); (App. 99-101; R. Doc. 33, at 14-16).

However, rather than beginning with individualized suspicion, Defendants allegedly conducted a broad geolocation query to identify all individuals present

within specified collegiate athletic facilities over defined periods of time. (App. 99-101; R. Doc. 33, at 14-16); (App.18-20; R. Doc. 32, at 14-16). Plaintiffs allege that Defendants did not obtain a warrant, lacked probable cause, and relied on no recognized exception to the warrant requirement. *Id.* On February 2, 2023, following the illegal search, Defendant Adkins emailed Defendant Nelson and Defendant Sanger – in an email titled "Thoughts from Yesterday" – wherein he admitted, amongst other things, that "we don't necessarily have a crime on the books in Iowa, but I think it would be a good idea to report them to the University, the Big Ten, and the NCAAS. If they get suspended or get a scholarship taken away, so be it." (App. 101; R. Doc. 33, at 16). Further, in this February 2, 2023, email, Defendant Adkins stated, "I think this is one of those things that would bring attention to our unit, not only in the public's eyes, but also as far as the commissioner and even possibly the legislatures." (App. 101; R. Doc. 33, at 16). Defendant Adkins even stated, "And if we pursue this and it hits the media, which it would, and people start asking why nothing criminal was done – we can use that platform to hopefully push legislatures for code changes moving forward." (App. 101; R. Doc. 33, at 16).

After identifying individuals through the geolocation search, Defendants allegedly issued subpoenas, sought warrants, and obtained additional records based on information derived from that search. (App. 22-30; R. Doc. 32, at 18-26); (App. 102-109; R. Doc. 33, at 17-24). Notably, on January 19, 2024, Defendant Sanger

gave a deposition where he admitted that at the time the subpoenas were issued, he did not have reasonable suspicion that a crime had been committed. (App. 103; R. Doc. 33, at 18).

The investigation resulted in suspensions, discipline, and criminal charges against certain Plaintiffs. (App. 26-27; 34-65; R. Doc. 32, at 22-23; 30-61); (App. 106; 109; 112-127; R. Doc. 33, at 21; 24; 27-42).

## C. Proceedings Below

Plaintiffs and Intervenors (hereinafter referred to collectively as "Plaintiffs") filed complaints alleging Fourth Amendment violations and failure-to-intervene claims. (App. 66-83; R. Doc. 32, at 62-79); (App. 128-134; R. Doc. 33, at 43-49). Defendants moved to dismiss under Rule 12(b)(6), asserting that no Fourth Amendment search occurred and that qualified immunity barred relief. (App. 138-39; R. Doc. 41, at 1-2); (App. 541-42; R. Doc. 43, at 1-2).

The district court held that Plaintiffs plausibly alleged an unconstitutional search but dismissed the case on qualified immunity grounds, concluding the unlawfulness of defendants' conduct was not clearly established. (App. 953-55; R. Doc. 89, at 25-27).

This appeal followed.

This appeal concerns whether law enforcement officers are entitled to qualified immunity after conducting a warrantless, suspicionless geolocation search that the district court correctly held violated the Fourth Amendment. The only question on appeal is whether the unlawfulness of that search – and the searches and seizures that followed – was clearly established at the time Defendants acted.

The district court erred in concluding that it was not. In doing so, the court defined the right at an impermissibly high level of specificity, effectively requiring a prior case involving the same technology and investigative context. Long before Defendants conducted this geolocation search, Supreme Court precedent clearly established that law enforcement may not use emerging technologies to conduct dragnet searches revealing individuals' movements and associations without probable cause and judicial authorization. *Kyllo* warned that advancing technology cannot be used to erode Fourth Amendment protections. *Kyllo v. United States*, 533 U.S. 27, 121 S. Ct. 2038, 2046, 150 L. Ed. 2d 94 (2001). *Riley* rejected warrantless searches of digital data based on analog-era doctrines. *Riley v. California*, 573 U.S. 373, 134 S. Ct. 2473, 2490, 189 L. Ed. 2d 430 (2014). *Carpenter* held that individuals have a reasonable expectation of privacy in historical location information and that warrantless access to such data is generally unconstitutional.

*Carpenter v. United States*, 585 U.S. 296, 138 S. Ct. 2206, 2218, 201 L. Ed. 2d 507 (2018). Those principles apply regardless of the particular tool used.

The district court compounded its error by dismissing Plaintiffs' Fourth Amendment claims challenging subpoenas and warrants obtained as a direct result of the unconstitutional geolocation search. Plaintiffs plausibly alleged that those subpoenas and warrants were premised on information derived from the initial unlawful search and would not have issued but for that constitutional violation. Clearly established law forbids officers from exploiting an unconstitutional search to justify further searches or seizures. Defendants are not entitled to qualified immunity for searches and seizures carried out pursuant to legal process allegedly tainted by an unconstitutional search. Officers have long been on notice that illegally obtained information cannot supply probable cause, and that constitutional violations cannot be laundered through subpoenas or warrants obtained after the fact.

Finally, because Plaintiffs plausibly alleged underlying Fourth Amendment violations, the district court erred in dismissing their failure-to-intervene claims. Officers who participate in, authorize, or fail to prevent unconstitutional searches and seizures may be held liable where they have a realistic opportunity to intervene.

Because Plaintiffs plausibly alleged violations of clearly established Fourth Amendment law, qualified immunity cannot be resolved at the pleading stage. The judgment should be reversed and the case remanded for further proceedings.

## I.  Standard of Review

This Court reviews de novo the dismissal of a complaint under Rule 12(b)(6), including determinations of qualified immunity. *Richardson v. Omaha Sch. Dist., 957 F.3d 869, 873 (8th Cir. 2020); Elder v. Gillespie, 54 F.4th 1055, 1063 (8th Cir. 2022).* All well-pleaded allegations must be accepted as true and viewed in the light most favorable to Plaintiffs. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

## II.  The District Court Erred in Holding That the Unlawfulness of the Geolocation Search Was Not Clearly Established

The district court correctly held that Defendants conducted an unconstitutional search. (App. 952-53; R. Doc. 89, at 24-25). However, it erred in concluding that clearly established law did not prohibit that search. (App. 953-55; R. Doc. 89, at 25-27).

### A. The District Court Correctly Held That Defendants Conducted an Unconstitutional Fourth Amendment Search

Plaintiffs alleged that Defendants used digital investigative tools to draw a digital boundary around university athletic facilities to obtain historical location information identifying individuals present within defined geographic areas – specifically, athletic facilities at the University of Iowa and Iowa State University – without a warrant, probable cause, or individualized suspicion. (App. 99-101; R.

Doc. 33, at 14-16); (App.18-20; R. Doc. 32, at 14-16). The district court summarized Plaintiffs' allegations which supported the court's finding that Defendants conducted an unconstitutional "search" under the Fourth Amendment. (App. 932-37, 952-53; R. Doc. 89, at 4-9; 24-25). That conclusion accords with Supreme Court precedent recognizing that location data "provides an intimate window into a person's life." *Carpenter*, 138 S. Ct. at 2217. The district court explained that "Applying well-established Fourth Amendment principles, the Court concludes a government official using advanced surveillance tools to isolate identifiable users within a particular geographic area to catalog and scan their historical geolocation data generated by a phone application without obtaining a warrant does not comport with the Fourth Amendment. To hold otherwise would be inconsistent with the founders' antipathy towards unrestrained surveillance and would authorize pervasive intrusions on privacy expectations." (App. 945; R. Doc. 89, at 17).

B. The District Court Defined the Right at an Impermissibly High Level of Specificity

Although the district court correctly found that Defendants' alleged conduct violated the Fourth Amendment, it dismissed the case on qualified immunity grounds, concluding that the unlawfulness of the search was not clearly established at the time of Defendants' actions. (App. 953-55; R. Doc. 89, at 25-27). That ruling

rests on an impermissibly narrow framing of the right and conflicts with controlling precedent.

A right is clearly established when existing precedent places the constitutional question "beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Courts may not require a prior case involving "the very action in question." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). The dispositive question is whether the law gave officers fair warning that their conduct was unconstitutional. *Id.* at 741.

The district court erroneously reasoned that, "Plaintiffs do not cite to any controlling authority or a robust set of persuasive authority clearly establishing this right, nor could they. The ability to surveil a person's historical geolocation data using an app's verification system is novel and courts have yet to reach a consensus on the constitutionality of such searches." (App. 954-55; R. Doc. 89, at 26-27). Here, the district court effectively required precedent involving the same technology and investigative context. *Id.* That approach is foreclosed by Supreme Court precedent. *Taylor v. Riojas*, 141 S. Ct. 52, 53–54 (2020) (per curiam).

C. Supreme Court Precedent Clearly Established That Warrantless Collection of Location Data Is Unconstitutional

Long before Defendants acted, Supreme Court precedent made clear that officers may not use emerging technologies to conduct dragnet searches revealing individuals' movements and associations without probable cause and judicial

authorization. *See, e.g.*, *Kyllo*, 533 U.S. 27; *Riley*, 573 U.S. 373; *Carpenter*, 138 S. Ct. 2206.

In *Kyllo*, the Supreme Court held that officers may not use sense-enhancing technology to obtain information about constitutionally protected spaces that would otherwise require physical intrusion. 533 U.S. at 34–35.

In *Riley v. California*, the Supreme Court rejected warrantless searches of digital data based on analog-era doctrines, emphasizing that modern technologies implicate "the privacies of life." 573 U.S. at 403.

And in *Carpenter*, the Supreme Court held that individuals have a reasonable expectation of privacy in historical location information and that the government generally must obtain a warrant supported by probable cause to access such data. 138 S. Ct. at 2220–21. The Court expressly rejected the notion that technological novelty diminishes Fourth Amendment protection. *Id.* at 2223.

The law in 2023 was clearly established that conducting a dragnet search of someone's historical location data without a warrant, without probable cause, and without individualized suspicion would violate the Fourth Amendment. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The "basic purpose of this Amendment," our cases have recognized, "is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials."

23

*Carpenter*, 585 U.S. at 303; quoting *Camara v. Municipal Court of City and County of San Francisco*, 387 U.S. 523, 528, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967).

The Supreme Court determined that obtaining location information from a third-party wireless carrier of a cell phone constituted a search and declined to extend the third-party doctrine to this type of information, when it held,

> The question we confront today is how to apply the Fourth Amendment to a new phenomenon: the ability to chronicle a person's past movements through the record of his cell phone signals. Such tracking partakes of many of the qualities of the GPS monitoring we considered in *Jones*. Much like GPS tracking of a vehicle, cell phone location information is detailed, encyclopedic, and effortlessly compiled.

> At the same time, the fact that the individual continuously reveals his location to his wireless carrier implicates the third-party principle of *Smith* and *Miller*. But while the third-party doctrine applies to telephone numbers and bank records, it is not clear whether its logic extends to the qualitatively different category of cell-site records. After all, when *Smith* was decided in 1979, few could have imagined a society in which a phone goes wherever its owner goes, conveying to the wireless carrier not just dialed digits, but a detailed and comprehensive record of the person's movements.

> We decline to extend *Smith* and *Miller* to cover these novel circumstances. **Given the unique nature of cell phone location records, the fact that the information is held by a third party does not by itself overcome the user's claim to Fourth Amendment protection. Whether the Government employs its own surveillance technology as in *Jones* or leverages the technology of a wireless carrier, we hold that an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through CSLI. The location information obtained from Carpenter's wireless carriers was the product of a search.**

A person does not surrender all Fourth Amendment protection by venturing into the public sphere. To the contrary, "what [one] seeks to

preserve as private, even in an area accessible to the public, may be constitutionally protected." *Katz*, 389 U.S., at 351–352, 88 S.Ct. 507.

...

**Neither does the second rationale underlying the third-party doctrine—voluntary exposure—hold up when it comes to CSLI. Cell phone location information is not truly "shared" as one normally understands the term**. In the first place, cell phones and the services they provide are "such a pervasive and insistent part of daily life" that carrying one is indispensable to participation in modern society. *Riley*, 573 U.S., at ——, 134 S.Ct., at 2484. Second, a cell phone logs a cell-site record by dint of its operation, without any affirmative act on the part of the user beyond powering up. Virtually any activity on the phone generates CSLI, including incoming calls, texts, or e-mails and countless other data connections that a phone automatically makes when checking for news, weather, or social media updates. Apart from disconnecting the phone from the network, there is no way to avoid leaving behind a trail of location data. As a result, in no meaningful sense does the user voluntarily "assume[ ] the risk" of turning over a comprehensive dossier of his physical movements. *Smith*, 442 U.S., at 745, 99 S.Ct. 2577.

We therefore decline to extend *Smith* and *Miller* to the collection of CSLI. Given the unique nature of cell phone location information, the fact that the Government obtained the information from a third party does not overcome Carpenter's *316 claim to Fourth Amendment protection.

(emphasis added) *Carpenter*, 585 U.S. at 309–10; 315.

The Eighth Circuit has also found that the third-party doctrine does not apply to cell phone location records. *United States v. Sesay*, 937 F.3d 1146, 1152 (8th Cir. 2019) ("Samaan's contention fails under the so-called third-party doctrine: "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Smith v. Maryland*, 442 U.S. 735, 743-44, 99 S.Ct. 2577, 61 L.Ed.2d

220 (1979). Even where a person discloses information to a third party "on the assumption that it will be used only for a limited purpose," the government typically is free to obtain that information without infringing on a legitimate expectation of privacy of the person who made the original disclosure. *See Carpenter v. United States*, —— U.S. ——, 138 S. Ct. 2206, 2216, 201 L.Ed.2d 507 (2018) (quoting *United States v. Miller*, 425 U.S. 435, 443, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976)). **While this doctrine does not extend to the novel phenomenon of cell phone location records**, *id*. at 2217, it encompasses checks and deposit slips retained by a bank, income tax returns provided to an accountant, and electricity-usage statistics tracked by a utility company. *See McIntyre*, 646 F.3d at 1111 (collecting cases).(emphasis added).)

Further, it is obvious that conducting a search without reasonable suspicion, without probable cause, and without a warrant would violate the Fourth Amendment. Accordingly, this was clearly established due to being so obvious. *Hope*, 536 U.S. 730. A reasonable officer would have understood that collecting historical location data for all individuals present within a geographic area, without a warrant or probable cause, violates these settled principles.

D. <u>The Court erred in finding it was not clearly established because there is "no case on point"</u>

The district court found that qualified immunity applies because no prior case involved geofence searches in collegiate athletics. (App. 954-55; R. Doc. 89, at 26-27). But the Supreme Court has squarely rejected that argument. A case "directly on point" is not required. *al-Kidd*, 563 U.S. at 741. Qualified immunity does not require a case involving identical technology or factual circumstances. It requires only that existing precedent place the constitutional question beyond debate. *Id.* Officials may be on notice that their conduct is unlawful even in novel factual circumstances. *Hope*, 536 U.S. at 741. General statements of the law are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though "the very action in question has [not] previously been held unlawful." *Id.* at 741; quoting *Anderson*, 483 U.S. at 640; *Taylor v. Riojas*, 141 S. Ct. 52, 52–54, 208 L. Ed. 2d 164 (2020); *McCoy v. Alamu*, No. 20-31, 2021 WL 666347, at *1 (U.S. Feb. 22, 2021).

Accepting the district court's position would allow law enforcement to evade constitutional limits through technological innovation by simply adopting new surveillance tools – an outcome the Supreme Court has expressly rejected, when it emphatically stated,

Here the progress of science has afforded law enforcement a powerful new tool to carry out its important responsibilities. At the same time, this tool risks Government encroachment of the sort the Framers, "after consulting the lessons of history," drafted the Fourth Amendment to prevent. *Di Re*, 332 U.S., at 595, 68 S.Ct. 222.

We decline to grant the state unrestricted access to a wireless carrier's database of physical location information. In light of the deeply revealing nature of CSLI, its depth, breadth, and comprehensive reach, and the inescapable and automatic nature of its collection, the fact that such information is gathered by a third party does not make it any less deserving of Fourth Amendment protection. The Government's acquisition of the cell-site records here was a search under that Amendment.

*Carpenter*, 138 S. Ct. at 2223.

E. *United States v. Chatrie* Confirms – Rather Than Undermines – That the Unconstitutionality of Defendants' Geolocation Search Was Clearly Established

Defendants are likely to rely on *United States v. Chatrie*, 590 F. Supp. 3d 901, 905 (E.D. Va. 2022), aff'd, 107 F.4th 319 (4th Cir. 2024), on reh'g en banc, 136 F.4th 100 (4th Cir. 2025), and aff'd, 136 F.4th 100 (4th Cir. 2025), to argue that geofence searches present a novel Fourth Amendment question thereby preventing this Court from finding the law was clearly established. However, that reliance is misplaced.

*Chatrie* did not announce a new constitutional rule. To the contrary, the Fourth Circuit, applying straightforward application of longstanding, technology-neutral Fourth Amendment principles articulated in *Carpenter and Kyllo,* found that the

"geofence warrant plainly violates the rights enshrined in [the Fourth] Amendment."
*United States v. Chatrie*, 590 F. Supp. 3d 901, 905 (E.D. Va. 2022), aff'd, 107 F.4th
319 (4th Cir. 2024), on reh'g en banc, 136 F.4th 100 (4th Cir. 2025), and aff'd, 136
F.4th 100 (4th Cir. 2025). The Fourth Circuit aptly noted that "[a]lthough cloaked
by the complexities of novel technology, when stripped of those complexities, this
particular Geofence Warrant lacks sufficient probable cause. The United States
Supreme Court has explained that warrants must establish probable cause that is
"particularized with respect to the person to be searched or seized." *Id*. at 929. The
court held that a geofence warrant – obtained with judicial authorization – was
nonetheless unconstitutional because it authorized a sweeping search of location data
for all individuals present within a geographic area without individualized probable
cause or meaningful particularization. The court then ultimately denied the motion
to suppress on a good faith exception regarding the <u>warrant</u>.

This case presents an even clearer constitutional violation. Unlike in *Chatrie*,
Defendants here allegedly conducted a geolocation search <u>without any warrant at
all</u>, without probable cause, and without prior judicial oversight. If a warrant-backed
geofence fails the Fourth Amendment, then a warrantless, suspicionless geolocation
search necessarily does as well.

*Chatrie* thus confirms what controlling precedent already made clear: law
enforcement may not use digital location technology unavailable to the public to

conduct dragnet searches identifying all individuals present within a geographic area without probable cause and judicial authorization. Defendants in this case were on notice of that rule when they acted, and qualified immunity does not apply. *al-Kidd*, 563 U.S. at 741; *Hope*, 536 U.S. at 741.

### III. The District Court Erred in Dismissing Fourth Amendment Claims Challenging Subpoenas and Warrants Tainted by the Unconstitutional Search

Plaintiffs separately alleged that Defendants issued subpoenas, sought warrants, and obtained additional records only after and because of the initial warrantless geolocation search. (App. 22-30, 69-78; R. Doc. 32, at 18-26; 65-74); Intervenor Compl. ¶¶ 103-120; 130-148, 317-29 (App. 102-109, 129-31; R. Doc. 33, at 17-24; 44-46). Those downstream legal processes were not independent investigative steps; they were the direct fruits of the unconstitutional search. The Fourth Amendment prohibits not only unlawful searches themselves, but also subsequent searches and seizures that are "come at by exploitation" of the initial illegality. *Wong Sun v. United States*, 371 U.S. 471, 488 (1963).

The district court nevertheless dismissed Plaintiffs' challenges to the subpoenas and warrants on the ground that Defendants were entitled to qualified immunity for the initial geolocation search. (App. 955-60; R. Doc. 89, at 27-32). That was error. If the initial search was unconstitutional and not protected by

qualified immunity, then downstream searches and seizures premised on that search are likewise actionable under the Fourth Amendment. *Wong Sun*, 371 U.S. at 488.

At the pleading stage, Plaintiffs were required only to plausibly allege a causal connection between the unconstitutional search and the subsequent subpoenas and warrants. They did so. Dismissal was therefore improper.

## IV. Qualified Immunity Does Not Shield Searches and Seizures Premised on Tainted Information

Defendants were also on clear notice of a separate, longstanding rule: law enforcement may not rely on illegally obtained information to justify further searches or seizures.

Plaintiffs alleged that the subpoenas and warrants here were not supported by untainted probable cause, but instead depended on identities and information derived from the unlawful geolocation search. (App. 22-30, 69-78; R. Doc. 32, at 18-26; 65-74); (App. 102-109, 129-31; R. Doc. 33, at 17-24; 44-46). At minimum, that allegation precludes dismissal on qualified immunity grounds. The contrary position would create an untenable rule: officers could insulate unconstitutional searches simply by laundering their results through subpoenas or warrants obtained afterward. The Fourth Amendment does not permit that result, and qualified immunity does not protect it.

If the decision to issue a subpoena or warrant is affected by illegally obtained information, then a seizure based off that tainted subpoena or warrant is an illegal

seizure. *United States v. Madrid*, 152 F.3d 1034, 1039–40 (8th Cir. 1998). Here, the warrant misrepresented the investigation by stating: "It was within the <u>normal course</u> <u>of duties</u>, investigators discovered numerous online sports wagering accounts which appeared to be suspicious and/or potentially fraudulent in nature." This statement was a material misrepresentation to the Court – leaving out the illegal search. (App. 105; R. Doc. 33, at 20). Instead, the warrants and subpoenas in this case were issued based on information illegally obtained through an illegal warrantless search – accordingly, the seizure of Plaintiffs' property as a result of those subpoenas and warrants is also illegal. *Madrid*, 152 F.3d at 1039–40.

At this stage in the proceedings, Plaintiffs only need to plead sufficient facts to allow the Court to draw the reasonable inference that Defendants are liable for the misconduct, here that the subpoenas issued were illegally supported. *See Ashcroft*, 550 U.S. at 570. Plaintiffs have done so. The Court, taking all the well-plead facts as true, could make the reasonable inference that Defendants did not have a lawfully authorized purpose for issuing the subpoenas because they were not engaged in a bona fide criminal investigation. *See Wendt*, at *11.

Accordingly, the seizure of Plaintiffs' property through warrants an subpoenas constituted a Fourth Amendment violation and the district court erred in granting Defendants' motion.

## V.    The District Court Erred in Dismissing Failure-to-Intervene Claims

Plaintiffs also alleged that Defendants participated in, authorized, or failed to intervene to prevent unconstitutional searches and seizures arising from both the initial geolocation search and its downstream investigative fruits. (App. 78-83; R. Doc. 32, at 74-79); (App. 131-34; R. Doc. 33, at 46-49).

It is clearly established that an officer who is aware of a constitutional violation and has a realistic opportunity to intervene may be held liable for failing to do so. "To prevail on a claim of failure to intervene …, [a plaintiff] must prove an underlying constitutional violation." *Perkins v. City of Des Moines, Iowa*, 712 F.Supp.3d 1159, 1181 (S.D. Iowa 2024) (emphasis added) (quoting *Bloodworth v. Kansas City Bd. of Police Comm'rs*, 89 F.4th 614, 628 (8th Cir. 2023)). Absent proof of an underlying constitutional violation, a claim for failure to intervene does not survive. *Id.* When a plaintiff has failed to establish a constitutional violation, such as the use of excessive force, an officer who would be liable cannot be. *See id.*; *see also Zubrod v. Hoch*, 907 F.3d 568, 573, 580 (8th Cir. 2018) (affirming district court's dismissal of claims against officers because they "cannot be held liable for failing to intervene where no constitutional violation occurred.").

However, once the underlying constitutional violation is established, an officer is liable if they (1) "observed or had reason to know" of the constitutional violation and (2) "had both the opportunity and means to prevent the harm from

occurring." *Nance v. Sammis*, 586 F.3d 604, 612 (8th Cir. 2009). This is the central premise of the failure to intervene cases, regardless of the nature of the underlying violation, as established by robust consensus. *See District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (robust consensus exists if precedent is clear enough "that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply."); *McClendon v. City of Columbia*, 305 F.3d 314, 331 (5th Cir. 2002) (robust consensus when cases are "in agreement as to the specific nature of that right."). The standard for a failure to intervene claim, being knowledge of and opportunity to act in prevention of a constitutional violation, is universal across the Circuits regardless of what violation it is being applied to.

Because Plaintiffs plausibly alleged underlying Fourth Amendment violations which the Defendants in this case were aware of and failed to act in prevention of, Plaintiffs' failure-to-intervene claims rise or fall with those violations. The district court dismissed these claims solely because it dismissed the underlying search-and-seizure claims on qualified immunity grounds. (App. 960-61; R. Doc. 89, at 32-33).

If this Court reverses as to the initial geolocation search or the downstream subpoenas and warrants, the failure-to-intervene claims must likewise be reinstated.

## CONCLUSION

The district court correctly held that Defendants conducted an unconstitutional search. It erred in concluding that the unlawfulness of that search

was not clearly established. Long before defendants acted, clearly established, technology-neutral Fourth Amendment principles prohibited warrantless, suspicionless geolocation searches designed to identify all persons present within a defined geographic area. Because Plaintiffs plausibly alleged such a search and its downstream consequences, qualified immunity does not apply. The judgment should be reversed and the case remanded for further proceedings.

## <u>PRAYER</u>

Appellants ask this Court to REVERSE the district court and to remand this case so that it may proceed to trial. Appellants ask for any other relief to which they may be justly entitled.

Respectfully Submitted,

*/s/ James P. Roberts*
James P. Roberts
SBOT: 24105721
**Palmer Perlstein**
15455 Dallas Parkway, Suite 540
Dallas, Texas 75001
Phone: (214) 2987-4100
Email: james@palmerperlstein.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2026, that an exact copy of Appellants' Brief was served via ECF to counsel for the Defendants-Appellees. I further certify that all privacy redactions have been made.

*/s/ James P. Roberts*
**JAMES P. ROBERTS**
**PALMER PERLSTEIN**

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

1. This brief complies with the type-volume limitation in Rule 32(a)(7)(B) because:

    a. This brief contains 6,412 words without any exclusions under Rule 32(f) accounted for;

2. This brief also complies with the typeface requirements of Rule 32(a)(5) and the type requirements of Rule 32(a)(6) because:

    a. This brief has been prepared in Times New Roman font, a proportionally-spaced typeface, using Microsoft Word 2010 with 14-point font for the text.

3. This brief and addendum have been scanned for viruses and are virus-free.

*/s/ James P. Roberts*
**JAMES P. ROBERTS**
**PALMER PERLSTEIN**